case number 18-5233. R.T. Dufur, Appellant v. United States Parole Commission. Ms. Flynn, amicus curiae, Ms. Yee for the appellee. Good morning. Court appointed amicus, you may proceed. Good morning, your honor, and may it please the court. Caroline Flynn as court appointed amicus for Appellant R.D. Dufur. After Mr. Dufur had served 37 years in federal prison for crimes he committed in 1979, he was eligible for mandatory parole under the Parole Act. The commission nonetheless denied him parole release. There are no jurisdictional or other procedural obstacles to this court reaching the merits of that determination, and that determination is based solely on the nature of his underlying 1979 offenses and his prior criminal history. And third, the commission's analysis entirely failed to take into account his outstanding California detainer, which undercuts a crucial factual premise for its finding that Mr. Dufur poses a risk of violent crime to the community if he is actually released. Starting with the first issue. So the government makes no effort to defend the commission's finding that Mr. Dufur's underlying offense, his escape attempt in 1979, itself constitutes a serious violation of institution rules precluding his parole release. But that was one of the two pillars of the commission. Let's be clear. As I understand it, the decision we are reviewing relies not on that ground, but on what I'll describe as the second exception allowed in the statute. Do you agree? I don't agree, Your Honor. Why not? That's what the plain language of the statement says. So the commission did also make a finding that Mr. Dufur is reasonably likely to commit a future crime, but in its final decision, in his case, the notice of action on appeal at J14, the commission added a second reason on appeal. It was not content to rest fully on- Excuse me for interrupting. In that statement, the commission styled that as one the initial panel could have made, but not that it did or not that the national appellate panel was making. So it's a bit speculative, no? I don't think so, Your Honor. But to clarify one thing, the same group of commissioners was voting on the initial decision and the second decision. Because his case is an original jurisdiction case, it's the same three people, we assume, in both instances. So it was really in the nature of a decision on reconsideration. It's denoted as the final decision of the board. And I'm not sure the government's given a reason why in this reconsideration decision, the commission would have noted the second reason if it were not relying on it. And I'd also note that the district court appeared to read the decision the same way we do. The district court said that the commission concluded the second thing. It addressed the second reason, the serious violation of institution rules on the merits at J46. And in Mr. Defer's more recent case, challenging a more recent parole denial, in summarizing what had occurred in the first mandatory parole hearing, the district court referred to the commission concluding both things. Well, let me ask you. I just need to be clear on this that he is challenging the decision of July 25, 2016. Is that not correct? That was the initial decision. But the final decision from November 2016 at J14 is what we understand to be. I mean, it incorporates the reasoning in the prior decision. We're not disputing that. But it is the commission's final word on why it was denying Mr. Defer parole. Well, he was under. He was. Excuse me, Judge Randall. I just want to finish up. The reasons that the commission gives. All right. I just need to be clear in that it's responding to Mr. Defer, correct? Yes, it's responding to his appeal in which he raised grounds to call into question the commission's previous determination. And I just need to see where the commission says we are deciding on both grounds of the exception. Sure. So the final sentence of the second paragraph says, in addition, the commission could have found that you seriously violated institution rules by escaping October 14th, 1979. Could have found. Right. Why is that the same as we find or we have found or we did find? Because I can't think of any other purpose for the sentence being in the determination other than to add an additional finding to justify the denial of mandatory parole. And again, to be clear, it was in suspenders like, you know, if for some reason it's in the background, it's not like two legs that are needed to stand. It's one leg. And if the one leg that we offer doesn't work, there's another. We could find this. Yeah. Independently available. Well, as I think your honor's question suggested, if the commission thought this were a valid reason, I would anticipate that the government would be defending both of them here and offering the second one were this court to think that the reasonable probability of crime finding failed. I mean, I think that is the purpose of adding a second reason is to sort of bolster the first one. But because the commission made that choice to offer both. Is your point that you've said that several times because the government doesn't defend it, it must be invalid. That's utter nonsense. And I don't know what the fuss is all about here. The guy was under federal custody, federal custody when he escaped. He was under custody for a federal offense. Isn't that right? The time that he spent in the county, the state county jail was credited towards his federal sentence, but he has a life waiting. He was awaiting trial on a federal offense. And so, you know, your argument that that doesn't count under the parole rule under 4206, it seems to me to be totally frivolous. He was under he was being incarcerated for a federal offense and he escaped as somebody was killed and an officer was shot. He had not yet been sentenced on his federal offenses. And I think, you know, the purpose of this inquiry is to see whether, you know, according to the congressional design is to see whether the prisoner has been rehabilitated during his time of federal incarceration. Well, you say that, but that is not what the statute says. Although the statute says, here's the rule, and there's a presumption. All right, there are two exceptions. And to me, the fact that Congress said there's an exception or two exceptions, and puts the decision on the exceptions in the commission, suggests that Congress contemplated that there would be circumstances where, despite the applicability of the presumption, there were reasons that the commission was not going to grant parole. And I think Congress would have envisioned that the commission would have focused its inquiry on the prisoners actual decades of federal imprisonment and his rehabilitation in prison. You know, Congress, even for life offenders, even for people who committed the most grave and serious crimes, Congress mandated that they be afforded a presumption of release. And that statute would read, here's what happens after three quarters of the sentence, period. There's no role for anybody else. Congress has decided, all cases. And that's not what Congress wrote. No, but Congress, if you compare the discretionary parole statute 4206A, where Congress told the commission to take into account the nature and circumstance of the offense, like here, one of the offenses was that escape attempt, where he was already convicted and given a one-year sentence for that. And Congress also told the commission at the point of discretionary parole, earlier in the prisoner's sentence, to take into account their criminal history. But those are not, Congress did not tell the commission to focus on those things when it comes to mandatory parole. And we think that makes a lot of sense. Well, I don't know that it makes a lot of sense. Let me ask you, if the prisoner was a model prisoner and committed no infractions of the institution's rules during his 30 years of incarceration, your theory has, he has to be released. You can't consider the nature and circumstances of his offense. That's your theory, isn't it? Our position is that the parole commission cannot deny a prisoner mandatory parole based on circumstances that were present the day he was sentenced. So yeah, so you read out this, that would, for anybody that doesn't violate the institution's incarceration, you read out the second part of the statute. They're automatically entitled to be released under your theory, but that ignores the second part. You know, and a hypothetical would be that Adolf Hitler, if he had been captured and was a model prisoner for 30 years, you don't have to consider the fact that he, that he was responsible for the murder of millions of people. That's, that can't be the law. So I don't think our position reads out the second exception, your honor. For instance, if a prisoner had shown no remorse or regret for the crimes that they committed, that's something the commission could take into account in finding that they still pose a reasonable risk or a reasonable probability of committing a future crime. That's not Mr. Defer. He is consistently throughout many parole proceedings expressed remorse. He has, you know, it's goes beyond just a lack of prison infractions. His case managers have said that he's been no management problem whatsoever. He's completed substantial, you know, programs and courses in prison. So I'm not, you know, I'm, I don't think the inquiry collapses in the variety of factors the commission can take into account, so long as they are trained in some on what has happened and what's transpired in the past 30 years or more of their federal. Even about it, that Congress could have written the statute as you have described it. But what I don't understand in your argument is why would Congress in this instance create a totally different system without expressly saying so. In other words, all kinds of cases come before district court judges and some are heinous offenses and some to the average person may not appear such. But that doesn't indicate what the nature of a discretionary sentence within the maximum sentencing range is going to be. I guess that's what's troubling here. But your point more particularly is that, as I understand it, that he was sentenced for the crimes he committed. And that's the punishment. But now he's sentenced under a scheme that creates a presumption. And I guess the ultimate point is your argument is under the commission's approach, there is nothing this particular prisoner could do where the board would decide, unless it's just a membership change on the board with a completely different sentencing philosophy, that this particular prisoner could be released before he completes his full sentence. Yes, Your Honor, that's our position. But according to the commission, the die was cast before he was even sentenced on these offenses, notwithstanding Congress's judgment that even life offenders should have a fair shot and be eligible for mandatory parole after 30 years. And so Your Honor was describing how the kind of sentencing endeavor that district courts undertake today, that is in the nature of the discretionary parole. Discretionary parole has guidelines, you figure out the parolees scores, you take into account their nature and circumstances, the nature and circumstances of the offense, the history and characteristics of the prisoner. But the commission did that in Mr. Defer's case, and that produced a range of 368 months. And they actually factored in the escape attempt three different times. As far as I can tell, this is a J-15, one of the hearings from his 2004, the determination from his 2004 hearing. And he served 368 months by year 31. So he's already served the entirety of what the commission previously thought he should be serving, taking into account how serious his original offenses were taking into account the escape attempt from the King County Jail. And we're now at the 40, you know, we're well past that point, he was he was eligible for mandatory parole at 30. This hearing took place in 2016, at 37 years, he's now been in prison for over 40 years. Ms. Flynn, to what extent is your argument a statutory text argument? And to what extent is it sort of a failure to meet the minimum rationality requirement, I gather under the Constitution. So the statutory argument I take you to be making is somebody's sentenced to life with the possibility of parole. And at the time of sentencing, the choice to give that sentence rather than life without possibility indicates that the pre sentencing conduct is not alone a reason to foreclose parole. And so that's an and that in the discretionary parole factors, the nature of the offense is explicitly to be considered and not so in the mandatory parole to Can you just spell out for me, how much are you making a statutory text argument? And how much are you making a more of a rationality argument? So in this respect, with this argument, we're arguing both that it was so irrational as to be arguing that the commission did exceed the scope of its discretion under 4206. And so, you know, to clarify, we are not arguing that Congress completely prohibited the commission from considering the underlying offenses, and you know, the prisoners history, but get when you look at a statutory scheme, or Congress told the commission to focus on that, and I'm sorry, are you arguing that it is prohibited from relying on the offense, the offenses known at the time of sentencing, alone? Does the statute prohibit that? Or you're not arguing that? I am arguing that Your Honor, sorry, if I was unclear. So but that it may consider them in combination with other information. If the commission has a basis, a rational basis to find that the prisoner is likely to commit or reasonably probable to commit a future crime, that turns in part on something that has taken place during the 30 years preceding the mandatory parole hearing, that is permissible. What is not permissible is to deny mandatory parole based on, you know, predominantly here on the nature of the underlying offenses. And, you know, factors that were present before he even received the mandatory parole sentence. But I mean, one, but not exclusively, I'm a little bit confused again. Because the commission didn't rely exclusively on the nature of the offense. They also looked at conduct while incarcerated, no? Not in making it's not making the commission's finding that he was reasonably probable. Well, actually, no, not making either finding. The commission did not rely on anything that took place during his incarceration. The attempted prison escape was before, you know, he was sentenced for that he was convicted on that that happened before he started serving his federal sentence. That was after he was that was after he he was convicted in federal court, that he escaped. Right. It was after he was convicted. It was before he was sentenced. Yes, you're right. It did refer to that, that the Mr. Dufour had completed substantial programming and and mentioned some programs. So it sort of was saying, yes, we're taking into account that you were, you know, you were a tractable and pretty good prisoner, but not the kind of extraordinary, you know, Mother Teresa that we would have to be given the the gravity of your offenses. I mean, why can't we why don't we have to read it that way, given the level of deference we afford to the commission? As I understand the commission's reasoning, there was nothing that happened during Mr. Dufour's incarceration that cut in favor of finding future dangerousness. It all cut the other way, as well as. But it didn't it didn't you said you can consider the the offenses on which the sentence is based, but just not exclusively. And I'm I guess I'm probing your characterization of the initial decision as exclusively relying because there's, you know, there's negative, which is these very violent multiple murders and escapes. That's the negative. And on the plus side, the commission does consider you've done some, you know, you've dug yourself part way out, but just not all the way out of the presumption of dangerousness. And so that's so it is considering not in a not in a negative way, but in a not positive enough way, what happened during his period of incarceration. Why isn't that the way we have to read this under the differential standard? Well, because I'm not sure what what Mr. Dufour could have done to offset the commission's reasoning about his prior crimes. I mean, here, he had not committed any act. It's undisputed. He'd never committed any act of violence during the entirety of his time in a federal institution. And he'd had a completely spotless record of any infractions, you know, whatsoever for the previous 15 years. And so I guess I don't think it's enough to say the commission considered his incarceration record and said, well, all that is good. But maybe it's not quite enough. There has to be something that happened that actually cuts in favor of saying no, we think this person is still reasonably probable. It's reasonably probably is going to commit a crime. But also just to maybe spend a moment on this, the commission specifically found he's reasonably probable to commit a violent crime if released. That was part of the commission's but the federal the federal system has to assume that it doesn't have any control over what happens in California. California doesn't really seem to have updated its thinking and that it considers him still on escape status. So it doesn't seem irrational to for the federal government to think, you know, there's some chance that California would release him. And so we're going to take that as our premise. Well, first, there's no taking your position would be well, at least it has to discuss that. It has to discuss it. And that's not just my position. It's in the statute at four to six feet, which requires the commission to explain its reasons for denying parole with particularity in writing to the prisoner. But also to talk about, you know, the chances of release. So again, the commission did not show even an awareness of this issue, let alone sort of suggest why it thought release was unlikely. But here, Mr. Mr. defer is not currently eligible for parole in California, as far as I can tell, what what is the remainder of his sentence in California? He has two life sentences, two life sentences in California. I guess the only reason he wasn't executed is because when he committed the offenses, the Supreme Court had yet to reinstate the death penalty. That was 1976 75. That when he committed the offenses about then when he was 18 years old. Yes, Your Honor. But so, you know, again, I'm not speaking as his counselor here, but as his amicus, it does not appear that he's currently eligible for parole. And we cite a Stanford Law School study at page 46 of our brief that looks at the population of people in California serving life sentences. And they found during the period they studied that only something like 18 percent of California prisoners serving life sentence were voted to parole from the California board. And only six percent of offenders who were murderers actually got out due to the governor's veto. Out of those people that were released out of the 18 percent, how many committed violent crimes after their release? So the study looks at all California lifers who are released and found that less than one percent even recidivated recidivated any kind of crime. And none of those people committed another life crime. Let me circle back for a moment, Ms. Flynn, and ask you about. So at the time of sentencing, I take part of your your argument to be that in a way affording this person the possibility of parole, there was a judgment made at the threshold that the conduct that had taken place so far was not disqualifying. And that we should sort of rest in part on that. And the commission didn't honor that. But at the time, were there ways or provisions for life without parole? Would that be something the district judge has to do in a discretionary manner? Or was there a murder statute under which you could get life without parole? I looked and it just seemed like this is a generally applicable sentencing provision, not something where the district judge really deliberately said, I'm affording an opportunity of parole here. That wasn't a very clear question, but do you know? No, my understanding is that the presumption comes from Congress, from Congress's rule that prisoners that life sentence prisoners are granted a chance at mandatory parole after 30 years. If I understand your honor's question, why is this when you say presumption? That's a rather ambiguous word in the law. You don't mean there's an evidentiary presumption. I don't see that there. What do you mean by presumption? The statute says if you do x 30 years, then you're eligible for parole unless such and so we're not Where does it get you by calling this a presumption? To me, analytically, it doesn't matter at all. Well, to start with a question of where I'm getting that from, that comes from the commission's determination in Mr. Defer's case, it uses the word presumption. The commission itself calls this mandatory parole in the Supreme Court ad denisio case that both sides cite the Supreme Court cites 4060 as a circumstance. Yeah, you can call it. That's not my question. You can call it whatever you want to call it. But I don't know how how analytically that factors in or helps you. If the if the individual committed a bunch of offenses while incarcerated, he's not going to get parole. And if if the commission finds that he's likely to commit more offenses, he's not going to get parole. So how's the understanding that, you know, reflected in the statutory text itself that there is, you know, the text says the prisoner shall be released unless one of these two more limited findings is made. Like, for instance, the commission couldn't say we think it'll depreciate the seriousness of the offense and deny mandatory parole on that basis. And so any again, in the ad denisio case, the Supreme Court referred to this as a limitation on the commission's discretion, as compared to discretionary parole. And so in a circumstance, the Supreme Court also referred to as a circumstance where parole is mandated by statute. So we, you know, we use presumption in the sense of the default is released unless one of these two specific findings are made. And then that's underlayed by the due process clause where there has to be a rational. I understand that, you know, that's a fair argument, but I don't know where, why presumption gets in here. It just seems to me, to obfuscate the issue before us. I mean, I thought that Ms. Flynn, you were relying really principally and all the other authorities also rely on 4206D reference to shall be released provided, however, shall not if. And the shall not if are limited, as you say, to serious and frequent violation of institutional rules and regulations or reasonable probability of committing a crime. And so the shall be released is the presumption. And those two exceptions are the ways to overcome what the statute frames as a presumption. That's what I take to be your. Yes. How do you square your argument with 4207? So in that provision, the Congress told the commission to consider various factors, if available and relevant. And so not everything in that list is relevant to a mandatory parole determination. For instance, you know, I think as I mentioned before, discretionary parole, the commission can take into account whether releasing the defendant early will depreciate the seriousness of the offense. And a victim impact statement, I think would be very relevant to that kind of determination. I'm not sure a victim impact statement is, you know, very So that's the burden of your argument to say that the nature of the offense is not relevant to consideration of whether the individual will commit another violent offense. That seems to me to be irrational. So let me clarify, Your Honor, I'm not, we are not taking the position that the commission is entirely precluded. We're just saying to the extent the government is arguing that 4207 shows that this is necessarily something that should be a big part of the inquiry. We don't think it shows that because the provision is sort of saying, take into account this list of things, if relevant to the inquiry. So I guess I should say I don't think 4207 really answers the questions we're talking about here, one way or the other. So no challenge to the statute in one sense, just its application to Mr. Defer. Our position is that the commission exceeded the scope of its discretion under 4206d, that it also violated 4206b by failing to take into account the California detainer and explain its reasoning on that point. But also that in this instance, the commission's reasoning and denying Mr. Defer parole was so irrational as to be fundamentally unfair in violation of the due process clause. So your brief, I thought your brief talked about it seems to me, your focus has been on the fact that it really doesn't matter who this person is, or what he's done. He's entitled to be released, unless he did something after he was sentenced for the federal offenses he is currently sentenced, that in the commission's judgment precludes his release. And yet, that ignores it seems to me what Congress was generally aware of, is that all kinds of different people get sentenced to life imprisonment. And some are for very serious offenses. Some are for repeated serious offenses, as in this case, even after arrested, even after in federal custody. And this man was totally in his way of what he wanted to accomplish. So given the scope of the population, as it were, to me, Congress could come up with a rational situation and statutory scheme that says, well, you know, it's up to the commission. If they think this guy ought to get out, even though he has this terrible record, so be it. But on the other hand, if we don't think he should, so be it. And since the statute can be read in a rational way, don't you think Congress had to say more specifically, which it didn't, that these pre sentencing considerations shall not be taken into account? I mean, you've read that into this, but it's not there. That's what I'm getting at. Yes, Your Honor. So our position is looking at 4206 as a whole, comparing 4206A, which again, specifically talks about these things, and 4206D, which does not, in which says the prisoner shall be released unless one of these two specific findings are made, not just jeopardize the public welfare, but a reasonable probability of future crime. And again, we're not saying that Congress totally precluded consideration of the- But you're asking us to read a single section of a statute where Congress is deemed to have ignored what it said in one subsection. And I'm not sure I know where that theory of statutory interpretation comes from, when Congress hadn't made it clear that what we said in subsection A is not to be considered when acting under subsection D. That's all I'm getting at. Sure, but I'm not sure why Congress would have bothered to specify that the commission should be taking into account the nature and circumstances of the offense in A, and then not mention that in D. I do think- Well, because they'd already mentioned it once. But it's an entirely different inquiry, Your Honor. 4206- But it doesn't say these factors are not to be considered. That's all I'm getting at. Right. And I think another way to think about it, Your Honor, is we're talking about a system of parole, the idea of which is to encourage good behavior while in prison, to encourage rehabilitation. And if you create a system where you don't encourage that at all because the die can be cast before the person is even- Of course, that is a problem of institutional management. But that's a different issue. But we think that that clear purpose behind this regime should inform the reading as well, and for the commission to be able to- Well, I gave you examples, it seems to me, of why Congress would want to have this provision, and yet understand that there are going to be some people who just never will get out. But I think in the circumstance of an offender who commits truly terrible crimes, but then for there to be nothing that still points in that direction during their incarceration, again, here Mr. Defer has expressed remorse and regret for his crimes. He's taken responsibility for them. This is not a petty larceny. This is where people were killed repeatedly. Right. When Mr. Defer was between the ages of 18 and 25 years old, and in the meantime, he served a substantial period of incarceration, which the criminology literature says that this is sort of- And we would have to read the statute in a manner that says that, as you argue, that the commission had exceeded its authority. Yes, or violated the- Well, I think the due process- You've got a hard argument there, but the authority seems to be less difficult for you in one way. The due process is a procedural reason giving or a substantive? What's the character of your due process claim? So, Mr. Defer raised multiple due process claims. In this respect, the district court understood this claim to be grounded in the equal protection component of the due process clause. This court has indicated that this test, the one we've laid out about could actually stem from the substantive due process clause. But I think at the end of the day, the cases we point to, the Ford v. Massarone case, the Johnson v. District of Columbia, they use this standard. They don't first ask whether or not the prisoner has a liberty interest in parole. So, that's why we followed that inquiry in our briefing. But that said, the district court here did find that Mr. Defer has a protected liberty interest in parole under the mandatory parole statute. Other circuits have found that with respect to both discretionary and mandatory parole in the context of the statutory scheme. We think that's entirely correct. So, I think to answer your question more directly, I'm not sure it matters which component it stems from. But the test this court has established is a baseline of the government can't act so irrationally as to be fundamentally unfair in offering its reasons for taking action in this space. And the fundamental unfairness, just very succinctly, that you would point us to is? That he was denied mandatory parole based solely on the nature of his underlying offenses of conviction and his pre-offense criminal history. So, circumstances that were baked in before he was even sentenced. And the commission was unable to point to anything during the, at this point now, over 40 years of his federal incarceration. All right. Why don't we hear from the government? We'll give you a few minutes on rebuttal. Thank you, Your Honor. Good morning. May it please the court. My name is Marcia Yee and I appear on behalf of the United States Parole Commission. I had actually intended to address the question, the first question that the court had asked for briefing on. But since we have focused so far on Amicus's point about the two different decisions, I do want to point out that the two relevant sentences in the Notice of Action on Appeal, which appears at J14, are those last two sentences. And to shortcut this, even were the court to assume for the purposes of argument that the Notice of Action on Appeal is the decision under review, the text of that notice shows that the commission denied parole on one prong. The, in addition, the commission could have found that you seriously violated institution rules by escaping on October 14th, 1979, is essentially dicta. It's a suggestion to future commission panels or commissioners that there's an additional reason that the commission could deny parole. If we were sort of analogizing to our more familiar context of a federal district court's decision represented by the Notice of Action and the Notice of Action on Appeal being that we are modifying or we are adding this additional ground, it merely says, affirm the previous decision. If I could turn to the question. Let me just focus you on one question that's important to me, which is, as Ms. Flynn argued, the mandatory parole establishes a presumption as of the time of sentence. And here, the clear implication taking the statute and the facts together is even given the heinousness, violence, and character of the crimes of commission, this individual was sentenced to life with the possibility of parole. And yet it appears the commission in determining the possibility of future crime looked exclusively to things that, as Ms. Flynn put it, were baked in when the sentence was granted with possibility of parole. And there just seems to be a basic conflict between those two positions. In a way, it's almost as if the carrot is held out for this individual. And after he behaved well in prison for 37 years, with the prospect of the mandatory parole finally occurring, that the commission has taken that away from him. And it just doesn't seem what Congress intended. Well, I think that sometimes a sentence of up to life in prison means life in prison. And that is actually what the commission decided here. And that decision is only reviewed for a rational basis. The commission has wide discretion, based on its considerable experience to conclude that based on the original offenses of murdering a non-duty law enforcement officer, and having previously committed these two state law murders for which he was convicted and from which he escaped from that sentence. And during that escape, he committed this murder of a non-duty law enforcement officer. And while he was- We do know the facts, and they are, as you emphasize, extraordinary. These are not, as Judge Rogers put it, these are not petty offenses. We all start from that baseline. The question really is, doesn't the statute in providing that a sentence meted out with possibility of parole? The statute basically assumes, and probably building on the kinds of social science research that Ms. Flynn's brief, or the intuition at least to that extent, that Ms. Flynn's brief points to, even the worst of the worst, if sentenced to have the possibility of parole, we're going to assume somebody who's 67 is not the same person as when he was 18. His cortex has developed, he's had a long time to think about it. And unless we have further reason in the provided, however, deny, unless we have further reason, the facts known at the time of giving a sentence with the possibility of parole are not enough. And I guess I want to know that, what else is it that this is promising that the commission pointed to? Well, the commission didn't specifically mention it, but the implication that he hasn't had any prison infraction during the last 15 years, doesn't mean that there were zero infractions or zero violations of the prison rules. This just happens to be what the decision specifically mentioned. We review the decision, we don't look behind that. Right. And so we accept the reasons the commission gave. And the question is the adequacy of those reasons. And obviously, if we were to find faults, we would be sending back to the commission and they could point to other things. But here the commission has basically said, look, this crime was so bad that this is really life without the possibility of parole, which just seems to, I mean, arguably, as Ms. provides. So I'm interested in your help in responding to that. Well, if my friend were correct in her interpretation, the statute would have been written differently. I'm referring to section 4207, which specifies all the factors that the court may, that the commission may consider in making parole decisions. For example, I am aware that the DC board of parole was required to consider more recent history or put greater emphasis on more recent behavior by a prisoner in considering whether to grant parole. That is not the statute we're dealing with here. But Ms. Flynn's response to that was that those A, B, C as the discretionary parole, as well as potentially mandatory and that it's conditioned by as relevant. And I take her position to be those are explicitly relevant to the discretionary parole, but the limitations in the two factors that rebut the presumption in mandatory parole render some of those not relevant in under D. I disagree with that interpretation. 4207 specifies the factors that the commission is required to consider for all parole decisions. I don't think it is a fair reading to say that because 4206A mentioned specific factors that you read out those factors when you deal with 4206D. When I go back, I don't need your permission, but I want to go back to the question whether we ought to be even adjudicating this case. Your position is that you raised, the government raised the question of venue and transfer because this was in essence a habeas corpus action, which I don't think is in dispute. And also you suggest that what the defendant was or what the inmate was doing here was forum shopping because he had filed a habeas action in California and that was denied. So I have a couple of questions that stem from that. Number one, where is he now incarcerated? He's incarcerated at an institution in California. I don't remember which one. So he's no longer in West Virginia. I thought he was in West Virginia. He was transferred. I thought he was in West Virginia. He's in Mendoza, California. So he's in California now. Ray, we lost you. You're audio and frozen. Anne, can you help out here? The deputy clerk. I am going to reach out to judge Randolph. Thank you. Can you hear me now? Yes. Yes. Thank you. Okay. So, Anne, if you want to correct me, I was in the middle of a question. I'm just trying to hello. And yes, I have fixed the timer. Great. Thank you very much. Okay. Thanks, Judy. So what I was saying is let's put aside the question for the moment about whether the venue and the habeas and so on and so forth is a jurisdictional matter. But why isn't it so, number one, that we have supervisory authority? And it seems to me that there's a potential here that if we allow this case to go forward, then it's hard to see why any other case brought against the parole commission by a prisoner anywhere in the United And so in the exercise of our supervisory power, let's suppose that we could do that. And what we could do is remand to the district court with instructions. And this is why I asked the first question to transfer the case to the proper venue. Now, and the question then would be, where is that? Is that West Virginia or is that California? I believe that under the court's precedent, the place of incarceration at the time the inmate was located is the proper venue for at the time the inmate what filed his original complaint, or the district court complaint. I know it's at the time where he was incarcerated at the time he filed his district court complaint. So that would be West Virginia here? Yes. Okay. That's fine. I'm finished. So I want to be clear. Any reason you did not make the motion to dismiss the part of the joint appendix? I believe technically, the motion to dismiss it as part of the record below and need not be included in the joint appendix. And that's because it's part of the record before the court even without our consent, including it. Well, maybe the government might consider the convenience of the court, if it's going to argue it raised certain issues in its motion to dismiss, it could include that motion in the joint appendix. I see your point, I would be happy. So the district court took all that into account and said, well, those were passing references, right? Yes, essentially. And why was that? What era as a matter of law, or as a matter of fact? It could be construed as both. I mean, the motion did actually cite Davis, which is the opinion of the court that established the operative habeas channeling rule for federal prisoners. And I would say that it could have been raised, or it could have been argued in a better way, it could have been in a standalone section as opposed to in the due process section. But we did raise this argument. Although not in the not in the district court, it was disavowed and not in the motion for reconsideration in the district court and not in the summary affirmance papers, but only after that waiver and or forfeiture only in the red brief here. Right, but a question of subject matter jurisdiction can never be waived or forfeited. And it's not the district court held that it's not a question of subject matter jurisdiction. Right. And we are challenging that part of his decision upon prompting from the court. So, if we hadn't asked you about it, you wouldn't raise it. Well, we believe we would prevail on the merits as we did. Below, that's not the thrust of Judge Randolph question. I'm sorry, we know she may prevail on the merits still. But his point is the exercise of supervisory authority, send it to the proper venue. Maybe West Virginia. Well, actually, if I may also offer that the district court made an alternative finding that he would not transfer this case. Right. And district rules on the merits. Right. But he could also have chosen to do so. For other reasons, including that he wouldn't have done it. But now that we've raised Guerra, he could do it simply because the parole commission is not a proper respondent. The proper respondent would be the warden, but the warden wouldn't have the authority to direct the parole commission to act differently. Would it? No, but that's the relief he's seeking. And so you're saying that relief is unavailable because he can only sue the warden because the immediate custodian and that immediate custodian does not have authority over the actions of the parole commission. Well, the warden would have to effectuate instructions from the parole commission if the parole commission had said release him, the warden has authority to release him. And if the court determines that the parole commission heard, then the warden has the authority to release the individual. That's the point of it. So I just wanted to be clear on one thing, and it was raised and I thought Amicus answered, namely that this is not where the federal district court judge who sentenced this man, sentenced him to life with a possibility of parole. He just sentenced him to life. And that this possibility of release before completion of his sentence arises from the sentencing judge did. I just want to be clear about that. I actually have no way of knowing one way or the other. Of course you do. You can look at what the district court did and said. Well, these records are quite old. I tried looking for them in Westlaw. I tried looking in Courtlink and they're not readily accessible. They are not unavailable. Is that correct? Right, but it would be rather onerous to get them. We could get them if the court so requires, of course. Well, I'm just trying to figure out what this case is really about. It's not where the original sentencing judge, and I'm trying to get the answer, thought, despite everything he'd done, the possibility of parole was down the road. Because if this is just arising from the statute, then it seems to me these are all considerations that the commission might have taken into account. In that vein, Ms. Yee, just to clarify, we covered this ground a little bit, but it would just help me to crystallize your position. Under the statute, someone who has as Mr. DeFore was not categorically sentenced to life without parole. He was not sentenced to death. In order to be denied mandatory parole, he has to somehow manifest a disqualifying probability that he will commit any crime. And in addition to the nature of the underlying offenses, what would you rely on? What do you believe the commission permissibly relied on to show that Mr. DeFore did manifest such a disqualifying probability that he would commit any crime? He murdered a third individual, and then he tried to escape while he was being held and before he was sentenced. Was there nothing in the post-sentencing conduct after the moment of being sentenced with the possibility of parole? Is there nothing, you know, shortfall or infraction that you believe the commission relied on that manifested the disqualifying probability that he would commit any crime? As I alluded to earlier, the record before the court does not include his complete history. No, but I'm asking about what the commission relied on. Right. From what I can tell, even though the commission acknowledged his good behavior, such as completing various programming, they concluded that it was based on his past history. So the good behavior was not enough. That's right. There was some good behavior, but it was not good enough to outweigh, and that's what they relied on. Right. And that's actually what the decision itself states. That's the second paragraph of JA-13. All right. Thank you. Let's hear from Amicus for a couple of minutes. Thank you, Your Honor. Three points, if I can manage them. So, you know, as we just discussed, the government has not been able to point to anything in the commission's express statement of reasons for why it denied Mr. DePere mandatory parole that, you know, stemmed from his actual period of imprisonment. You know, counsel referred to maybe it didn't include his complete history. I'm not sure what that is a reference to, but of course, we're limited to the reasons the in its determination, that's 4206B. You know, Judge Randolph suggested that there might be forum shopping going on here and that this could lead to all these cases being filed in the District of Columbia. It was within the government's power to keep that from happening. It could have raised improper venue. It could have raised the immediate custodian rule. It, you know, demonstrated some awareness of those concepts, but chose not to raise them and then told the district court, quote, to ignore venue, probably because it wanted to a 12B6 termination on the merits. Those, you know, the venue issue, the subject, the custodian issue are not issues of subject matter jurisdiction. This court has said that in Ramsey and Chapman Bay and Fletcher. They are forfeitable. They are waivable. But as for whether a transfer is appropriate, you know, we, I speaking as amicus, I don't see why transfer wouldn't be appropriate in this case, given the venue issues. You know, I don't know that it makes sense to send it back to West Virginia where he's no longer in custody. He's currently in a medium security facility in Mendota, California. The warden in West Virginia has no control over him at this point. And I believe the precedent that council might've been referring to is circumstances where somebody's transferred, but there's still somebody within the jurisdiction with power to carry out the, the judgment here. We already have that with the parole commission who has participated in this case fully never objected on the basis of being the improper respondent. So, you know, we think it was proper for the district court to reach the merits here, but we also think a transfer to another place where the commission could execute the judgment would be appropriate as well. And then just, well, I see I'm, I'm past my- You say to execute the judgment, what you want is a new hearing. Yes, your honor. Mr. Deferne's complaint requested a new hearing. Yes, I know. So it's not execute the judgment, is it really? You know, it could be deemed a conditional release on habeas. District courts, I think, have handled this issue differently. Either send it back for a new hearing while retaining jurisdiction or issue the writ with a conditional order of release if a hearing is not conducted within a certain amount of time. I think these are questions. I mean, again, we're just at the motion to dismiss stage. I think these are questions that might be best addressed to the district court, but all Mr. Deferne's asking for is a new hearing at which, you know, the, the things, the issues we've been talking about can be addressed and the commission stays within the bounds of its discretion under 4206D and the due process clause. Did you get all three points in there? I got two. I believe I did, your honor, but- It's fine. If you got them in, that's all I want to be sure. Okay. Thank you, your honor. We will take the case under advisement.
judges: Rogers, Pillard, Randolph